NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KELLY L. WAH o/b/o N.L., a minor,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 17-6396 (SDW)<br><br>**OPINION**<br><br>April 17, 2019 |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Kelly L. Wah's ("Plaintiff") appeal, filed on behalf of her minor child N.L., of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Dennis O'Leary's ("ALJ O'Leary") denial of N.L.'s claim for Supplemental Security Income ("SSI") disability benefits under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ O'Leary's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On November 8, 2012, Plaintiff applied for SSI benefits on behalf of her son N.L. based on his alleged autism. (R. 170.) That claim was first denied on April 25, 2013 and again on reconsideration on September 10, 2013. (R. 52-60, 62-71.) Plaintiff appealed, and ALJ O'Leary conducted a hearing on February 12, 2015. (R. 28-50.) ALJ O'Leary denied N.L.'s claim for SSI benefits on April 20, 2015, and on June 24, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision. (R. 7-23, 143.) The Appeals Council denied Plaintiff's request for review on June 22, 2017, making the ALJ's decision the Commissioner's final determination. (R. 1-3.) Plaintiff now asks this Court to reverse the Commissioner's decision and remand for an award of SSI benefits. (Compl. 3, ECF No. 1.)

### B. Factual History

N.L. was three years old at the time his SSI application was filed. (R. 144.) He lives in Elizabeth, New Jersey with his mother, two sisters, aunt, and cousin. (R. 46-47, 145.) The record consists of medical evidence and school evaluations.

In July 2012, N.L. underwent a speech-language evaluation at Trinitas Hospital. (R. 294-301.) As noted in the evaluation, Plaintiff was concerned with N.L.'s delayed speech and communication skills, as he often pointed to things to have his needs met. (R. 295.) The evaluation indicated that N.L. presented as a "friendly, happy child." (R. 296.) N.L. was mostly cooperative during the evaluation, but his attention to tasks decreased over time to the point where the evaluators could not administer the last test. (*Id.*) Caroline Hayes-Rosen, M.D. ("Dr. Hayes-Rosen") examined N.L. in September 2012, and diagnosed him with autistic spectrum disorder due to his expressive speech delay with articulation problems. (R. 290.) Dr. Hayes-

Rosen opined that N.L. would require special pre-school education for autistic children and speech therapy three times per week. (*Id.*)

In December 2012, the Elizabeth Public Schools' Preschool Child Study Team ("Team") evaluated N.L. at his mother's request. (R. 207-15.) The Team noted that N.L. exhibited cognitive functioning "within the upper limits of the borderline range, with indications of delayed language skills." (R. 213.) They also determined that, despite needing some extra attention and motivation from teachers, N.L. "would benefit from exposure to the structure, routines, and language-rich environment of a classroom, appropriate language models, peer social interaction, and practice using language in school." (*Id.*)

By May 2013, N.L. was enrolled in an inclusive preschool program, and an annual review of his Individualized Educational Program ("IEP") revealed improvements in his skills. (R. 243.) Plaintiff still had concerns regarding N.L.'s communication skills, but was "happy" with the progress her son had made since the start of the preschool program. (*Id.*) The report indicated that N.L. still had somewhat delayed communication skills, but played well with toys and was able to interact with his fellow classmates. (R. 243-45.) The IEP concluded that N.L. would attend general education kindergarten the following year with a special education teacher and modifications for speech. (R. 257.)

In October 2013, Elizabeth Public Schools re-evaluated N.L. (R. 362-72.) The evaluation indicated that N.L. had average reading and writing skills; low average brief reading, oral expression, math reasoning, and academic applications; low oral language skills; and very low listening comprehension and academic knowledge. (R. 365.) The evaluator stated that N.L. appears unable to follow directions, and "requires redirection consistently." (*Id.*) The evaluation also concluded that N.L. still required special modifications to the general education curriculum.

(R. 366.) N.L. was re-evaluated in April 2014, and his low scores on numerous tests led to the conclusion that he has "expressive and receptive language skills that are below average[.]" (R. 357-61.) The final evaluation in the record from May 2014 reiterates many of the problems that N.L. has with focusing and communicating, but notes that he gets along well with others, works well in group activities, participates in class, and continues to improve in his ability to attend to task. (R. 385.)

### C. Hearing Testimony

Plaintiff appeared alone at the administrative hearing, despite the Notice of Hearing directing that she bring N.L. (R. 111.) Plaintiff testified that she noticed N.L. had certain developmental problems at the age of one, but that she was advised to wait until he turned three to consult with a neurologist. (R. 34-35.) N.L. was diagnosed with autism at the age of three because he did not make eye contact. (*Id.*) When N.L. started pre-school, he was placed in one-on-one sessions and attended speech therapy twice per week. (R. 35.) Plaintiff expressed concern with N.L.'s learning abilities, testifying that he did not know his colors, could not identify letters and numbers, and did not know how to read or spell. (R. 36.) Plaintiff also stated that N.L. has been diagnosed with and takes medication for attention deficit hyperactivity disorder ("ADHD"). (R. 39.) Although the medication helped to calm N.L., Plaintiff testified that it did not help him to pay attention. (*Id.*) Plaintiff tries to do N.L.'s homework with him, but she has difficulty getting him to sit and focus. (R. 44-45.)

## II.    LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of

the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

**B. The Three-Step Child Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual under the age of 18 will be considered disabled under § 1614(a)(3)(C) of the Act if he (1) is not engaged in gainful substantial employment and (2) has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. A claimant must show that the "medical signs and findings" related to his ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

Even if an impairment does not meet, or is not medically equal to, the requirements of an impairment in the Listing of Impairments ("Listings"), 20 C.F.R. § 404, Subpart P, App. 1, the claimant may be disabled if his impairment or combination of impairments is functionally equivalent to a listed impairment. 20 C.F.R. § 416.926a. Functional equivalence is measured by

assessing the claimant's ability to function in terms of the following six domains, which are broad areas of functioning intended to capture all of what a child can or cannot do: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a Listing if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(b)(1)(i-vi).

The Act has established a three-step sequential process to evaluate a minor's disability application. 20 C.F.R. § 416.924(a). At step one, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. If yes, the individual is not disabled and the claim is denied. 20 C.F.R. § 416.924(b).

If the claimant is not currently engaged in substantial gainful activity, then, at step two, the ALJ must determine whether the claimant has a severe and medically-determinable impairment or combination of impairments. If not, the individual is not disabled and the claim is denied. 20 C.F.R. § 416.924(c).

If the claimant has a severe and medically-determinable impairment, then, at step three, the ALJ must determine whether the claimant's impairment meets, medically equals, or functionally equals an impairment in the Listings. If the claimant's impairment meets or equals an impairment in the Listings, and meets the duration requirement, disability is presumed and benefits are awarded. 20 C.F.R. § 416.924(d). If the claimant's impairment does not meet or equal an impairment in the Listings, or does not meet the duration requirement, the individual is not disabled and the claim is denied. 20 C.F.R. § 416.924(d)(2).

## III. DISCUSSION

On April 20, 2015, ALJ O'Leary issued a decision concluding that N.L. is not disabled. At step one of the disability analysis, the ALJ found that N.L. is not engaged in substantial gainful employment. (R. 13.) At step two, the ALJ found that N.L. suffers from speech delay disorder and ADHD, both severe impairments. (*Id.*) Finally, at step three, the ALJ concluded that, while N.L. does have some limitations, they do not combine to meet or medically equal the requirements of Listings 112.02 for organic mental disorders or 112.11 for ADHD. (*Id.*) ALJ O'Leary also concluded that N.L. does not have an impairment or combination of impairments that functionally equal the severity of the Listings. (R. 14-22.) Specifically, the ALJ found that N.L. has less than marked limitations in: acquiring and using information; attending and completing tasks; interacting and relating with others; the ability to care for himself; and health and physical well-being. (R. 16-22.) He also has no limitation in moving about and manipulating objects. (R. 20-21.) As such, the ALJ found N.L. was not disabled. (R. 22.)

On appeal, Plaintiff argues that the ALJ erred in his medical equivalence analysis and that the ALJ's functional equivalence analysis was not based on substantial credible evidence in the record. (R. 6, 16.) This Court considers both arguments and finds them each without merit.

### A. Medical Equivalence Analysis

Plaintiff first argues that remand is necessary because the ALJ did not adequately substantiate his Listings analysis. Specifically, Plaintiff takes issue with ALJ O'Leary's concise statement that "[s]ections 112.02 and 112.011 [sic] were considered." (Pl.'s Br. 11, ECF No. 17.)

Courts have held that a plaintiff waives the argument that his symptoms equal a listed impairment when he "makes no attempt to explain the precise basis for his belief" and "makes no direct reference to the specific criteria enumerated in [the] Listings[.]" *McConnell v. Astrue*, No.

3:2009-44, 2010 WL 2925053, at *5 (W.D. Pa. July 20, 2010). Here, any challenge to the ALJ's determinations as to Listings 112.02 and 112.11 is waived because Plaintiff does not point to any specific evidence that would change the disability analysis. (Pl.'s Br. 6-12.) Instead, Plaintiff focuses on a lack of detail in the ALJ's opinion regarding the medical equivalence analysis. However, it is clear from reading the opinion as a whole that the ALJ properly considered the medical evidence in determining whether N.L.'s impairments met the Listings' requirements. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Plaintiff also argues that the ALJ erred because he did not categorize N.L.'s autism spectrum disorder as a severe impairment or compare it with elements in Listing 112.10. (Pl.'s Br. 16.) In making this argument, Plaintiff relies on Dr. Hayes-Rosen's 2012 diagnosis of autistic disorder due to N.L.'s "expressive speech delay and articulation problems[.]" (*Id.* at 12.) While an ALJ "is not free to employ his/her own expertise against that of a physician who presents competent medical evidence," (*id.* at 15), it is clear that ALJ O'Leary explicitly relied on subsequent medical and classroom evidence, which did not support a diagnosis of autism spectrum disorder. In explaining why he did not analyze N.L. under Listing 112.20 for autism, the ALJ noted that N.L. receives no treatment for autism, and none of N.L.'s school examinations mention any signs of autism. (R. 13.) To the contrary, evidence from N.L.'s school evaluations indicates that Plaintiff's main concerns were related to N.L.'s speech development, and portrays him as "a sociable, friendly young boy, who separate[s] easily from his parents and engage[s] readily with evaluators." (R. 188.) Thus, there is substantial credible evidence to support ALJ O'Leary's finding that N.L. does not have a severe impairment related to autism and his opinion as a whole demonstrates that the ALJ thoroughly considered all of the evidence. *Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) (holding no reversible

error where an ALJ thoroughly reviewed the available evidence after a broad impairment analysis).

### 2. Functional Equivalence Analysis

In order for a child to functionally equal a Listing, his impairment must result in "marked" limitations in two or an "extreme" limitation in one of the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In the instant matter, Plaintiff argues that ALJ O'Leary's decision must be reversed and/or remanded because his analyses of the first, second, third, and fifth domains were "based on random selections of the evidence." (Pl.'s Br. 16.) Though Plaintiff points to parts of the record to contradict the ALJ's findings, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citations omitted). For the reasons listed below, this Court finds that ALJ O'Leary's findings are supported by substantial credible evidence.

With respect to the first domain, i.e., acquiring and using information, ALJ O'Leary based his findings on N.L.'s cognitive test results. (R. 16-18.) In particular, the ALJ noted that in January 2013, N.L. was in the "upper limits of [the] borderline range of cognitive functioning[,] and in February 2014, he demonstrated some improvements from the borderline to average range. (R. 17-18.) This Court notes that two state agency psychologists cited to reports that N.L. was able to label many objects and had an extensive vocabulary, and similarly found that he had a less than marked limitation in the first domain. (R. 57, 68.)

As for the second domain, i.e., attending and completing tasks, ALJ O'Leary acknowledged N.L.'s ADHD diagnosis, but found that N.L. had less than marked limitations because there was evidence in the record that N.L.'s concentration continues to show improvement. (R. 18-19.) Again, both state assessments classified N.L. as having less than a marked limitation in this domain. (R. 57, 68.)

With respect to the third domain, i.e., interacting and relating to others, ALJ O'Leary cited to evidence that N.L. "exhibit[s] cooperative behavior and . . . easily engages with clinicians." (R. 20.) The claimant has been "described as sociable, friendly, . . . and engage[s] readily with evaluators." (*Id.*) The ALJ further noted a recent school evaluation, which stated that N.L. "gets along well with other students and that he likes to participate in discussions." (*Id.*)

Based on the ALJ's opinion as whole, there is also substantial credible evidence to support the ALJ's determination that N.L. has a less than marked limitation in the fifth domain, i.e., caring for oneself. *See Jones*, 364 F.3d at 505. Though one doctor noted Plaintiff's subjective assessment that N.L. tends to be aggressive with other kids and has self-injurious behaviors when he is upset, (R. 351), ALJ O'Leary's determination is supported by objective evidence. For example, the ALJ specifically addressed N.L.'s behavioral problems, including complaints that he would hit other children, and found that the intensity, persistence and limiting effects of these symptoms were not entirely credible. (R. 15.) In reaching this determination, ALJ O'Leary referenced education records that stated N.L. never gets upset with people who do not understand him, (R. 358), and that described him as friendly and able to get along well with other students, (R. 385). Additionally, the record reflects that N.L. can brush his teeth with help, control his bladder throughout the day, undress himself, follow a routine, and that he tolerates

bathing. (R. 167, 212.) Accordingly, there is substantial credible evidence to support the ALJ's determination.

## IV. <u>CONCLUSION</u>

This Court finds that ALJ O'Leary's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ <i>Susan D. Wigenton</i>
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties